# PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* BROWN, ADMINISTRATRIX.

[No. 21,895. Filed January 25, 1912. Rehearing denied May 29, 1912.]

1. CARRIERS.—*Carriage of Goods.—Contract of Carriage.—Breach. —Complaint.—Theory.—Allegation of Negligence.*—In an action for damages to goods delivered to a railroad company for shipment, a complaint alleging a contract for carriage of the goods, the setting of a car by defendant with directions to load the goods therein, the loading of the car and notice to defendant that it was loaded and ready to go forward, that defendant negligently and carelessly and with great force and violence shunted the car from its side-track onto its main track against a heavily loaded freight-train, so as to crush and demolish the car and by reason of said carelessness destroyed the goods loaded therein, does not sound in tort, but clearly seeks to recover for the failure to transport property under a special contract, and is sufficient on that theory, the allegations as to the careless or negligent manner in which the car was taken up and the property injured having no force except as characterizing the manner in which carriage failed. p. 18.

2. APPEAL.—*Actions.—Misjoinder of Causes.*—Under §346 Burns 1908, §341 R. S. 1881, a reversal of a judgment for overruling a demurrer for misjoinder of causes of action is expressly prohibited. p. 19.

3. APPEAL.—*Actions.—Misjoinder of Causes.*—Section 346 Burns 1908, §341 R. S. 1881, applies even though the damages under one paragraph go to the estate, and those under the other go to the next of kin. p. 20.

4. CARRIERS.—*Carriers of Live Stock.—Contract.—Carrying Shipper.—Consideration.*—Under the provisions of a contract of carriage identical with those set out in the case of *Lake Shore, etc., R. Co. v. Teeters* (1905), 166 Ind. 335, 77 N. E. 599, 5 L. R. A. (N. S.) 425, the common-law duty of a carrier to care for stock while in shipment is limited by the contract and imposed on the shipper, the consideration for which is the agreement to carry the shipper to enable him to care for it. p. 20.

5. CARRIERS.—*Carriers of Live Stock.—Shipper as Passenger.— Complaint.*—In an action to recover for injuries received by a shipper of live stock a complaint showing that the shipper was in the car with the stock while the car was on a side-track ready to be transported pursuant to a contract imposing on him the

duty of caring for the stock, sufficiently shows the shipper's relation to be that of a passenger, although the car had not yet been placed in the train, since the court cannot say as a matter of law that his presence in the car at that time was not necessary properly to care for the stock. p. 21.

6.  CARRIERS.—*Carriers of Live Stock.—Shipper as a Passenger.— Exemption from Liability.*—Where a shipper of live stock is carried as a passenger, the carrier cannot stipulate for absolution from liability for injuries to him arising from its negligence. p. 21.

7.  DEATH BY WRONGFUL ACT.—*Complaint.—Damages.—Allegations. —Sufficiency.*—A complaint in an action by an administrator to recover for the wrongful death of the decedent, alleging that after receiving the injuries, the decedent was, during the balance of his life, incapable of performing any labor, and was put to great expense in medical attention, nursing and medicine, and his estate was put to great expense on account of his death, and was damaged thereby in the sum of $10,000, is sufficient to withstand a demurrer on the question of showing a loss both to the estate and to the next of kin. p. 21.

8.  DEATH BY WRONGFUL ACT.—*Complaint.—Dependency of Next of Kin.*—A complaint, in an action by an administrator to recover for the wrongful death of his decedent, need not allege that the widow and children were dependent on decedent for their support. p. 21.

9.  APPEAL.—*Presenting Matter for Review.—Briefs.—Waiver of Point.*—A point not presented in appellant's brief is waived. p. 22.

10.  APPEAL.—*Briefs.—Failure to Set Out Pleadings.*—An objection that plaintiff's amended complaint stated a new cause of action is waived, where neither the form nor substance of the original complaint is set out in appellant's brief. p. 22.

11.  CARRIERS.—*Carriers of Live Stock.—Shipper as Passenger.— Injury to Shipper.—Presenting Claim for Damages.—Answer.*— In an action to recover for the death of a shipper of live stock from injuries received through the negligence of the carrier, an answer, on the theory that the right of the shipper to be in the car was by virtue of the contract of carriage in which the right to recover damages was based on the condition that a claim in writing should be made to defendant within five days from the time the damage occurred, and that no claim was presented, was insufficient, since the contract of carriage was in form a live stock contract in which the provision as to presenting claims for injury clearly referred to claims for injury to live stock and personal property. p. 22.

12.  PLEADING.—*Admissions.—Proof.—Appointment of Administrator.*—Pleading the general denial to an action brought by an ad-

ministrator admits the representative character of the plaintiff, and it need not be proved.  p. 23.

13.  DEATH BY WRONGFUL ACT.—*Evidence.*—*Damages.*—In an action to recover for the death of a shipper, who was a passenger on defendant's road accompanying a shipment of live stock and goods, evidence showing that the car was shunted against a freight-train with such force as to break in two and break down a number of two by four studding that had been securely nailed in the car to hold the goods in place, and threw the goods upon the shipper and upon the stock and caused the stock to trample upon and injure him so that he required medical attendance to his death, that he weighed 180 pounds at the time of his injury and gradually became reduced to 120 pounds, and that he had an earning capacity of from $600 to $800 per year, is amply sufficient to sustain a recovery for $2,300.  p. 23.

14.  EVIDENCE.—*Best and Secondary Evidence.*—*Contents of Writing.*—*Accounting for Loss or Destruction.*—Parol evidence of the contents of a written instrument is inadmissible in evidence, unless the loss or destruction of the instrument is accounted for by the person in whose hands it was at the time of the loss or destruction.  p. 24.

15.  EVIDENCE.—*Best and Secondary Evidence.*—*Contents of Writing Collateral to Issue.*—*Primary Evidence.*—*Exceptions.*—The rule excluding parol evidence of the contents of written instruments does not apply where the instrument or its contents are collateral to the main issue, or where the parol evidence is as near to the thing testified about as the written evidence.  p. 25.

16.  EVIDENCE.—*Best and Seconadry Evidence.*—*Primary Evidence.* —*Correct Copy of Lost Instrument.*—A correct copy of a lost written instrument is in itself primary evidence of the contents of the writing, and admissible when the fact of its being a true copy is not contradicted.  p. 25.

17.  EVIDENCE.—*Best and Secondary Evidence.*—*Notice to Produce.* —*Admissibility of Copy of Lost Instrument.*—Where the correctness of a copy of a lost written instrument was not disputed, it was admissible as primary evidence of the contents of the writing without serving notice for the production of a copy of the instrument in the hands of the adverse party.  pp. 25, 29.

18.  APPEAL.—*Harmless Error.*—*Admission of Evidence.*—*Copy of Written Instrument.*—*Correctness Admitted by Pleading.*—Where defendant by its answer in bar of the action relied on a copy of a written instrument, it thereby declared and admitted the correctness of the copy and was not harmed by its admission in evidence.  p. 25.

19.  TRIAL.—*Instructions.*—*Directing Verdict.*—*Refusal.*—Where there was evidence to support the complaint, instructions re-

quested directing a verdict for defendant were properly refused. p. 26.

20. TRIAL.—*Instructions.—Right of Shipper of Live Stock to be Carried in Car With Stock.*—In an action to recover for the death of a shipper of live stock, who was at the time of the injury in the car with the stock, and where the shipment was pursuant to a live stock bill of lading imposing on the shipper the duty of caring for the stock while in transit, defendant's requested instructions grounded on the theory that the contract did not authorize decedent's carriage on a freight-car, and that he was bound to know that he could not be thus carried, even though he was in the car with the knowledge or consent of defendant's station agent, were properly refused. p. 26.

21. TRIAL.—*Instructions.—Death by Wrongful Act.—Damages.*—In an action by an administrator to recover for the wrongful death of the decedent, an instruction which told the jury that the damages must be restricted to the actual pecuniary loss, if any, shown to have resulted to the widow and child, and not for pain and suffering endured by the deceased, nor for funeral expenses or sorrow on account of his death, fairly stated to the jury the proper elements of damage. pp. 26, 27.

22. EVIDENCE.—*Mortality Tables.—Action for Wrongful Death.*—In an action to recover for a wrongful death tables of mortality showing the expectancy of human life are admissible on the question of damages resulting to the widow and next of kin. p. 26.

23. TRIAL.—*Instructions.—Limiting Damages.—Action for Wrongful Death.*—In an action by an administrator to recover for the wrongful death of decedent, defendant's requested instruction which sought to limit the damages to the value of the services of the deceased from the time of the injury to his death, to the expense of nursing, medicine and medical treatment, and to the expense that his estate was put to, was properly refused. p. 27.

24. TRIAL.—*Instructions.—Refusal of Instruction Covered by Other Instructions.*—There was no error in refusing a requested instruction, where the proposition embraced therein was fully covered by other instructions given by the court. p. 27.

25. CARRIERS.—*Carriers of Live Stock.—Shipper Accompanying Stock.—Action for Injuries to Shipper.—Question for Jury.*—Where a shipper of live stock was entitled, under the contract of carriage, to ride as a passenger in charge of the stock, in the absence of any contract provision as to where he should ride, it was for the jury to determine, in an action for injuries to the shipper, whether he had a right to be in the freight-car with the stock, or whether his riding should be restricted to the caboose. p. 28.

26. CONTRACTS.—*Validity.—Contract Void in Part.*—A contract may be void in part without making the whole contract invalid. p. 29.

27. EVIDENCE.—*Best and Secondary Evidence.—Duplicate Originals.*—Where an instrument is made and executed in duplicate by mechanical means, all are duplicate originals and any of them may be introduced in evidence without accounting for the nonproduction of the other. p. 30.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Phoebe Brown as administratrix of the estate of Samuel J. Brown, deceased, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*George E. Ross,* for appellant.
*Theodore Shockney,* for appellee.

MYERS, J.—This cause went to the jury on the first and third paragraphs of the complaint, the second and fourth having been withdrawn on the trial.

The complaint was originally filed January 4, 1904, and was later amended, and, with the third, filed as an amended complaint October 6, 1906.

The facts of the death of appellee's decedent April 22, 1903, of appellee's appointment and qualification as administratrix May 12, 1903, and of appellant being a common carrier, with its line of railroad running through the city of Dunkirk, in Jay county, Indiana, are alleged in each paragraph.

In the first paragraph it is alleged that on or about January 10, 1903, appellee's decedent, being the owner of certain household furniture, horses and cattle, of the value of $1,000, entered into a written contract with appellant to ship his property from said city of Dunkirk over its line of railroad to the town of Carlisle, in Sullivan county, Indiana, which contract is set out and is in the usual form of bills of lading;

that appellant owned, operated and used a switch and side-track in said city of Dunkirk, on which it placed empty cars for the use of its patrons, and that, pursuant to said contract, defendant furnished decedent a car on said side-track, and directed him to load his said property therein for shipment, and he loaded the property therein; that defendant negligently, carelessly and with great force and violence, and without any notice to decedent, by means of a locomotive engine and heavily-loaded cars, kicked, shunted, shoved, pulled and dropped said car from said side-track onto its main track, against defendant's freight-cars and heavily loaded freight-train there standing on defendant's main track, with such force and violence as to crush, break and demolish said car, into which decedent had loaded his said property, and in which he was at the time ready for transportation, and without notice to him, and without any fault or negligence on his part forced said car by means aforesaid upon and against defendant's said freight-train on its main track, whereby and by reason of said carelessness and force destroyed decedent's property to his damage in the sum of $1,000; that defendant immediately after the demolition of the car unloaded the property from the demolished car, and examined the property, and then and there determined the extent of the injury, and made a list of it, which it retained, and immediately thereafter loaded it into another car, and forwarded it to its destination. Demand for $1,000 damages on this paragraph.

The third paragraph alleges that defendant's railway line extended from Dunkirk to the town of Carlisle, and that on or about January 5, 1903, decedent entered into the written contract set forth in the first paragraph, counting upon it as a contract of carriage of himself, and that while the car was loaded and on the side-track, and after defendant had been notified that the car was loaded and was ready for transportation, and when defendant knew that decedent was in said car and ready to be carried and transported, de-

fendant carelessly, negligently and unnecessarily caused the injury in the manner alleged in the first paragraph, and, in addition, adds that by reason of such unskilfulness, carelessness, negligence and unnecessary force, decedent while in the car, which he had entered for travel, was so struck, bruised, crippled, maimed and permanently injured that he sickened and died April 22, 1903; that by reason of such injury, decedent was made to suffer in body and mind, and was thereafter during his life rendered incapable of performing any labor, and was put to great expense in medical attendance, nursing and medicine, and his estate put to great expense on account of his death, and has been damaged thereby in the sum of $10,000; that he was fifty-three years old, and left surviving him his wife, a son sixteen years old, and a son — years old, and demand is made for $20,000 damages.

To each of these paragraphs a demurrer was addressed on account of insufficient facts, and that several causes had been improperly joined. The demurrers were overruled and appellant excepted.

There was answer in general denial, second an answer to that part of the first paragraph which was to recover for injury to decedent's stock, horses and cattle, because no claim in writing was filed, as required by the contract, setting out its provisions in that particular.

The third paragraph addressed to the third paragraph of the complaint alleges that the right of action originally declared on was for wilful injury, and that the original complaint is set out therein, and that a new and different cause of action is set up in the third paragraph of the complaint, and is barred by the two-year statute of limitations.

The fourth paragraph addressed to the third paragraph of the complaint sets up the failure within thirty days after the happening of the accident, and the accrual of the alleged damages to file a claim therefor, and relies on a clause in

the contract providing that no claim for damages which might accrue to him under the contract should be allowed or paid, or used in court by decedent, unless a claim should be filed within five days from the time the damage accrued, on the theory asserted in the answer, that if decedent had any cause of action it was under the contract alone. Demurrers were sustained to the third and fourth paragraphs of answer. On trial and verdict, and over motion for a new trial, judgment was rendered for appellee, from which this appeal is prosecuted, based on alleged errors presented in ruling on the demurrers to the complaint and answers, and overruling appellant's demurrer to the reply to the second paragraph of appellant's answer, and overruling appellant's motion for a new trial.

The sufficiency of the first paragraph of the complaint is challenged on the grounds (1) that it seeks to recover for breach of a special contract, and that no breach is alleged, nor compliance or offer to comply with the contract on appellee's part; (2) that it fails to show any duty or breach of duty necessary to charge actionable negligence; (3) that it is not shown that appellant had received the property for transportation; and (4) that if the paragraph seeks to charge a tort, facts showing actionable negligence are not shown.

Taking the second and fourth points first, we think there can be no doubt that the paragraph does not sound in tort, but is for breach of a contract of carriage. It may

1. be that allegations as to the careless or negligent manner in which the car was taken up and the property injured or destroyed were unnecessary, but the complaint clearly seeks to recover for the failure to transport property under a special contract, and these allegations have no force except as characterizing the manner in which carriage failed, though there may be cases where liability arises from negligence, as, for example, negligence in forwarding, or in failing to protect or care for property, or negligence contrib-

uting to a loss, where the primary cause is due to the act of God.

The facts alleged clearly show that the property had been received for transportation.

A contract for carriage is shown, also the setting of a car with direction to load, its loading, notice that it was loaded and ready to go forward, and its taking up to be put in the train for transportation. *Ohio, etc., R. Co.* v. *Yohe* (1875), 51 Ind. 181, 19 Am. Rep. 727; *Evansville, etc., R. Co.* v. *Keith* (1893), 8 Ind. App. 57, 35 N. E. 296; *Bennett* v. *The Guiding Star* (1893), 53 Fed. 936; *Rogers* v. *Wheeler* (1873), 52 N. Y. 262; *Merriam* v. *Hartford, etc., R. Co.* (1850), 20 Conn. 354, 52 Am. Dec. 344; *Montgomery, etc., R. Co.* v. *Kolb & Hardaway* (1882), 73 Ala. 396, 49 Am. Rep. 54; *Pittsburgh, etc., R. Co.* v. *Barrett & Walton* (1881), 36 Ohio St. 448; *St. Louis, etc., R. Co.* v. *Murphy* (1895), 60 Ark. 333, 30 S. W. 419, 46 Am. St. 202; 6 Cyc. 412-415.

As to the first point, it is sufficiently disclosed that there was an undertaking to carry, and acceptance for carriage, and a failure to carry and deliver, and a compliance on the part of the shipper with the things required of him.

As to the third paragraph, the challenge is that the facts alleged do not show appellee's decedent to have been a passenger, or actionable negligence in the omission of any duty owing to him which caused the injury; or if actionable negligence is otherwise shown, that it is not shown that decedent was earning or capable of earning anything, and that a complaint which seeks to recover for damage to and destruction of property, as sounding in contract, is improperly joined with a cause of action sounding in tort for injury to decedent from which he died, and there was a demurrer for the latter cause, but under our statute a reversal of judgment for overruling a demurrer for misjoinder of causes of action is expressly prohibited. §346 Burns 1908, §341 R. S. 1881; *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, 76 N. E. 529; *Brown* v. *Bern-*

*hamer* (1902), 159 Ind. 538, 65 N. E. 580; *Murphy* v. *Brana-man* (1901), 156 Ind. 77, 59 N. E. 274; *Armstrong* v. *Dunn* (1896), 143 Ind. 433, 41 N. E. 540; *Thompson* v. *McCorkle* (1894), 136 Ind. 484, 34 N. E. 813, 36 N. E. 211, 43 Am. St. 334.

Section 346 Burns 1908, §341 R. S. 1881, providing that no judgment shall be reversed for any error committed in sustaining or overruling a demurrer for misjoinder 3. of causes of action, applies even though the damages under one paragraph go to the estate, and those under the other paragraph go to the next of kin.

The contract set out in the complaint as an inducement to the carriage of decedent so as to constitute him a passenger, is a live-stock form of contract on which household goods and farming implements were also shipped. The portions of the contract on which appellee relies as constituting a contract of carriage of the decedent in the same car with the live stock and inert property, are identical with those set out in the case of *Lake Shore, etc., R. Co.* v. *Teeters* (1906), 166 Ind. 335, 77 N. E. 599, 5 L. R. A. (N. S.) 425, and are, for that reason, not set out, but are here referred to. Under these provisions, without any allegations as to custom or necessity, or direction to decedent to go into the freight-car, but on an allegation of notice that he was in the car, appellee claims that decedent had a right to be transported in the car as a passenger.

The common-law duty of appellant to care for the stock is limited by the contract and imposed on the shipper, the consideration for which is the agreement to carry 4. the shipper to enable him to care for it. *Chicago, etc., R. Co.* v. *Hostetter* (1908), 171 Ind. 465, 84 N. E. 534.

In *Lake Shore, etc., R. Co.* v. *Teeters, supra,* an instructive case, under an identical contract with the one before us, it was, in effect, held, that it could not be said as a matter of

law that appellee's position in the car instead of in the caboose was not warranted or negligent. The allegations of the complaint before us show that the car had not yet been placed in the train. The possibility of the stock being unacquainted with the cars, or with being carried on cars, with the movement of, and in cars, and its consequent fright or uneasiness and need of attention, at least until quieted down to the condition thus created, may have been a sufficient reason for decedent's presence in the car at that time, so as to create his relation as that of a passenger. *Lake Shore, etc., R. Co.* v. *Teeters, supra,* and cases cited.

If, as we hold, he was a passenger, appellant could not stipulate for absolution from liability for injuries arising from its negligence. *Lake Shore, etc., R. Co.* v. *Teeters, supra; Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 76 N. E. 299, 4 L. R. A. (N. S.) 1081; *Louisville, etc., R. Co.* v. *Keefer* (1896), 146 Ind. 21, 44 N. E. 796, 38 L. R. A. 93, 58 Am. St. 348; *Louisville, etc., R. Co.* v. *Faylor* (1890), 126 Ind. 126, 25 N. E. 869; *Ohio, etc., R. Co.* v. *Nickless* (1880), 71 Ind. 271; *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 17 Am. Rep. 719.

It is alleged in this paragraph that decedent was, during the balance of his life, rendered incapable of performing any labor, and was put to great expense in medical attention, nursing and medicine, and his estate was put to great expense on account of his death, and has been damaged thereby in the sum of $10,000. These allegations are sufficient to withstand demurrer on the question of showing a loss both to his estate and to the next of kin, besides it is not necessary that the complaint allege that the widow and children were dependent on him for support. *Pennsylvania Co.* v. *Coyer* (1904), 163 Ind. 631, 72 N. E. 875; *Salem Bedford Stone Co.* v. *Hobbs* (1894), 11 Ind. App. 27, 38 N. E. 538.

A second paragraph of answer, addressed to that part of

the first paragraph of complaint which seeks to recover for injury to his stock, horses or cattle, was based on the terms of the contract of shipment, which provided that no claim for damages which may accrue shall be allowed or paid unless a claim for damages shall be made in writing by affidavit, and delivered to the agent of the carrier within five days from the time the stock is removed. To this answer a reply was filed, to which a demurrer is alleged to have been overruled and exception reserved, but the point is not presented in the brief and is therefore waived.

As to the third paragraph of answer, addressed to the third paragraph of complaint, it is asserted in the brief that the original complaint was for wilful injury, and that the cause of action in the third paragraph of amended complaint states a new cause of action, and was not brought within two years of the date of the injury.

The original complaint, neither in form nor substance, is set out in the brief, and the statements of the brief, as to the action being for wilful injury, are denied by appellee, hence the question as to the ruling on demurrer to it is waived.

The fourth paragraph of answer to the third paragraph of complaint is based on the theory that if the decedent had any right in the car, it was by virtue of the written contract, in which the right to recover damages is based on the condition that a claim in writing should be made to defendant within five days from the time the damage accrued, and that neither decedent nor plaintiff presented any claim for the damages within thirty days after the happening of the injuries complained of. A demurrer to it was sustained. The difficulty with this answer is that the terms of the contract clearly refer that provision to claim for injury to live-stock, certainly to the personal property. The contract itself was in form a live-stock contract, with which other chattel property was included.

It is stated by appellant in its brief: "There is no dispute in the evidence as to the extent of the injury to such personal property." The same thing was stated by counsel in oral argument. The damage to the personal property, as shown by the evidence, was $423.50.

On the motion for a new trial, it is insisted that there is no evidence to show the appointment of appellee as administratrix. The evidence need not have shown that fact. Pleading the general denial, as in case of the general issue at common law, admits the representative character, and it need not be proved. *Weathers* v. *Newman* (1822), 1 Blackf. 232; *Pollard* v. *Buttery* (1833), 3 Blackf. *239; *Linville* v. *Earlywine* (1838), 4 Blackf. 469; *Lowe* v. *Bowman* (1840), 5 Blackf. 410; *Bray* v. *Parker* (1888), 82 Ga. 234, 7 S. E. 922; *Hazelhurst* v. *Morrison* (1873), 48 Ga. 397; *Tobler* v. *Stubblefield* (1869), 32 Tex. 188; *Haggerty's Exrs.* y. *Powell* (1851), 6 La. Ann. 533; *Sanford* v. *McCreedy* (1871), 28 Vt. 103; *Willis* v. *Willis* (1837), 6 Dana (Ky.) *48.

The rule and the reasoning for it are the same as in case of an action against a corporation, and its general appearance, or answer of general denial. *Adams Express Co.* v. *Hill* (1873), 43 Ind. 157; *Ohio Oil Co.* v. *Detamore* (1905), 165 Ind. 243, 247, 73 N. E. 906, and cases cited; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 451, 78 N. E. 1033, and cases cited; *Liening* v. *Gould* (1859), 13 Cal. 598.

The evidence is sufficient to support a recovery on the question of negligence, fully covering the allegations of the complaint. What we have said as to the complaint disposes of the question of liability under the contract for the injury to decedent as a passenger.

The evidence shows an earning capacity of the decedent of from $600 to $800 a year, and that he was an industrious man, and the tables of mortality were therefore properly admitted, and the evidence amply sufficient to sustain the recovery—$2,300.

The evidence discloses that the impact of the car was sufficient to break in two and break down a number of two by four studding which had been securely nailed in the car to hold the household goods and farming implements in place, and to throw them on decedent and on the animals, and to throw decedent under the feet of the animals, which trampled on him, so that he vomited blood, and was in great pain, and had medical attendance until his death; that he weighed 180 pounds at the time of his injury and gradually became reduced to 120 pounds.

There was evidence tending to show that the bill of lading, or contract, was issued in duplicate, one copy given to decedent and one retained by appellant. On the trial the original issued to decedent could not be found, and proof was made of that fact by the attorney who last had, and had copied the original for the complaint, and his testimony given that the copy attached to the complaint was a true one, and the copy from the complaint was offered in evidence. Objection was made that there was no evidence that the originals were lost, no effort to produce and procure the copy in the possession of appellant; that a copy could not be introduced in evidence if the original could be had; that the original is in possession of defendant, and there was no evidence of its being lost, no request or demand to produce it was made, and that the copy was not the best evidence. The objection was overruled and exception taken, and reliance is here placed on *Newton* v. *Donnelly* (1894), 9 Ind. App. 359, 363, 36 N. E. 769.

It is an elementary principle that parol evidence of the contents of a written instrument is inadmissible in evidence, unless the loss or destruction of the instrument

14. is accounted for by the person in whose hands it was at the time of the loss or destruction, if that person be living. We also have a statute (§502 Burns 1908, §479 R. S. 1881), in regard to the production of books and papers in the possession of the adverse party. There are some

exceptions, however, to this rule, as where the instrument or its contents are collateral to the main issue. *(Coonrod* v. *Madden* [1890], 126 Ind. 197, 25 N. E. 1102), or where the parol evidence is as near the thing to which the witness testifies about as the written evidence, then each is primary. *Hewitt* v. *State* (1889), 121 Ind. 245, 23 N. E. 83; 1 Wharton, Evidence (3d ed.) §77. The evidence here admitted was not collateral, but is primary; the fact of the evidence offered, being a copy of a lost, written instrument, clearly shows that it could not be different from and was precisely the same as the original, and the reason for the rule of excluding parol evidence, in the possibility and likelihood of mistake in memory and wrong to an adversary, wholly fails when applied to true copies which are present. Nor was it necessary to serve notice for the production of the copy in the hands of appellant, under the circumstances in this case, when it is not claimed that it was not a correct copy, so that production by appellant would present the same writing, and could, under no view, prejudice or affect the rights of appellant.

To say that when, in course of a trial, it is suddenly discovered that a written instrument necessary to be given in evidence is lost, or cannot be found, and a true copy is present, and that fact is not contradicted, that a trial must be arrested until a notice can be given, and time given for the production of a duplicate in the hands of an adversary, cannot be correct.

A very different rule, and for obvious reasons, would and should obtain, if there be no copy present, or its correctness contradicted.

In any event, appellant was in nowise harmed by the admission of a copy of an instrument which it had relied on by its answer in bar of the cause of action, which was in itself both a declaration and an admission of the correctness of the copy given in evidence.

Instructions two and four were requested to direct a verdict as to the first and third paragraphs of the complaint. As there was evidence in support of each, the instructions were properly refused.

The eleventh, twelfth, fourteenth, fifteenth and sixteenth instructions tendered by appellant and refused were grounded on the theory that the contract did not authorize decedent's carriage on a freight-car, and that he was bound to know that he could not be thus carried, even though he was in the car with the knowledge or consent of appellant's station agent.

What we have said as to the third paragraph of complaint disposes of appellant's proposition, besides the tenth instruction tendered by appellant and given, and instructions five, twelve and thirteen given by the court cover the question fully.

Appellant tendered instructions seventeen and nineteen, which were refused, to the effect that under the third paragraph of complaint there could be no recovery of damages for shortening the life of decedent, and that the tables of mortality, given in evidence, could not be considered for that purpose, and reliance is placed on *Richmond Gas Co.* v. *Baker* (1897), 146 Ind. 600, 45 N. E. 1049.

In the latter case there was no death, here there was, and life was shortened, and in the fifteenth instruction the jury was told that the damages must be restricted to the actual pecuniary loss, if any was shown to have resulted to the widow and children, and not for pain and suffering endured by the deceased, nor funeral expenses nor sorrow on account of his death.

The expectancy of a human life, coupled with earning capacity, is a necessary element in determining the question of the damages resulting to the next of kin, and while there can be no recovery for shortening life itself, still the tables of expectancy may be taken into consideration for the purpose of determining what the actual dam-

ages are, and the case last cited so holds, and the instruction restricting the damages to actual pecuniary loss from the death, fairly stated to the jury the proper elements of damages.

The eighteenth instruction tendered by appellant, and refused, sought to limit the damages under the third paragraph of complaint, to three items: (1) If he was rendered incapable of performing any labor, from the time of the injury to his death, to the value of his services during that time, (2) to the expense of medical treatment, nursing and medicine, and (3) the expense his estate was put to. It will be seen at once that the instruction ignores the statute as to actions accruing to the next of kin.

The twentieth instruction, tendered and refused, was to the effect that no inference could be drawn that death occurred from the injuries alleged, but that it must be proved by a preponderance of the evidence.

The proposition was fully covered by the eighth and ninth instructions given by the court. The twenty-first instruction requested, goes to the question of no right of recovery for pain and suffering of the decedent, and the instruction *verbatim* was given in the court's instruction nine.

Objection was made to nearly all the instructions given, and it will be sufficient to make brief reference to them. As to the first, it is averred that while the facts stated in the instruction as to the first paragraph of complaint show a duty and its breach, the facts stated in the complaint show no duty or breach. No particular is pointed out and we are able to perceive none. Objection to the second instruction is that it ignores the issue of the appointment of appellee as administratrix, and leaves it to the jury to determine whether there had been a waiver of the notice of injury under the contract. As to the first point, we have already adverted, and as to the second, by the third or next instruction the jury was told what conduct would amount to a

waiver, and there was evidence as to such conduct. Criticism of the fourth instruction is made on the ground that it does not state the issuable facts of the third paragraph of complaint, and which, as stated, might create a cause of action. We do not perceive any variance, and, taken with the other instructions, the jury could not have been misled or appellant harmed by the instruction, because it was told that the mere fact of decedent being in the car is not sufficient, and that it must be found that he had a right to be there.

The fifth instruction is challenged on the ground that the instruction leaves it to the jury to say whether decedent had a right to be in the car, and that there being no evidence on that point, except the contract, it was the duty of the court to determine from the contract whether decedent had a right to be in the car.

Under the rule in *Lake Shore, etc., R. Co.* v. *Teeters, supra,* the point is not well taken. It is there said: "There is absolutely nothing in said contract which assumes to provide where the man in charge shall ride, but by the last clause of the bill of lading reference is made to a consideration based on the 'carriage of a person or persons in charge of said stock upon a freight-train.'" This contract contains the same provision, and it was held that the question as to whether the person should ride, or whether his riding should be restricted to the caboose was not a question of law permitted by the construction of the contract and that it depended upon the inferences which might be drawn from the evidence in the case. *Illinois Cent. R. Co.* v. *O'Keefe* (1897), 168 Ill. 115, 48 N. E. 294, 39 L. R. A. 148, 61 Am. St. 68, 103, note; *Primm* v. *Haren* (1858), 27 Mo. 205; *Mantz* v. *Maguire* (1892), 52 Mo. App. 136; *Reynolds* v. *Richards* (1850), 14 Pa. St. 205.

Instruction thirteen is complained of as leaving to the jury the determination whether appellant contracted to carry decedent, or accepted him as a passenger, without evi-

dence other than the contract to support it. What we have said as to the fifth instruction applies to the thirteenth.

Objection is made to the fourteenth instruction as leaving to the jury the determination whether the written contract is in fact a contract, and in instructing it that the clause releasing appellant from liability for its own negligence is void, if a case is otherwise made out, on the ground that the contract must be taken as an entirety, and if any part of it is void, the whole must be regarded invalid. The reverse of this position has been so many times decided, that we do not take up space to cite cases.

No reversible error is made to appear, and the judgment is affirmed.

## On Petition for Rehearing.

Myers, J.—The learned counsel for appellant urgently insists that the court was in error in upholding the admissibility of the bill of lading copied into the complaint, without, as is claimed, laying the ground for its introduction. The evidence shows that the copy was made from a duplicate original bill of lading, issued to appellee's decedent, and lost by her attorney.

Appellant has set up in its answer the same contract, and it was in the record declared and relied on by each party. If appellee had introduced in evidence appellant's answer containing that copy, it could scarcely be claimed that that was not an admission of the execution of the specific contract. When it was offered as it was, the entire pleadings, including the copy in appellant's answer, were before the court, and as it was for the court to determine its admissibility, the admission by the answer, in which it is alleged that it is a copy, was necessarily an admission of its being a true copy, and the court was bound to take notice from the pleadings, as to whether they were the same.

There is no such fixed rule of evidence, that it may not be varied under any circumstances or conditions. The evidence

shows that the bill of lading was prepared by appellant, and delivered to decedent. It was appellant's own act, and by making and delivering it in duplicate, appellant not only consented that it was genuine, but that it was an original, and primary evidence, and it was not required, in order to admit one of the originals or a copy thereof, when one original is lost, that there be notice to produce the other original. And when the loss of one original is shown, can it be said that a copy admitted by the pleadings cannot be shown, without notice to produce the other original? The reason for such rule is wholly wanting, and forms an exception to the general rule. *Totten* v. *Bucy* (1882), 57 Md. 446; *Hubbard* v. *Russell* (1857), 24 Barb. 404; *Walker* v. *Southern R. Co.* (1906), 76 S. C. 308, 56 S. E. 952; *Dyer* v. *Fredericks* (1874), 63 Me. 173; *Cincinnati, etc., R. Co.* v. *Disbrow & Co.* (1886), 76 Ga. 253; *Breed* v. *Nagle* (1872), 46 Ga. 112; *Johnson* v. *Haight* (1816), 13 Johns. 470; *Philpson* v. *Chase* (1809), 2 Camp. 110; *Gotlieb* v. *Danvers* (1796), 1 Esp. 455; *Eisenhart* v. *Slaymaker* (1826), 14 S. & R. 153; *Jory* v. *Orchard* (1799), 2 B. & P. 39.

It is said by Professor Wigmore (2 Wigmore, Evidence §1231), in discussing the question of "original" and "copy", that "in order to state the rule then (with respect to their admission) in terms which will indicate in the rule itself what documents are included in its scope, it must be noted that the production required is the production of the document *whose contents are to be proved under the issues.*" The practical situation in this case was that both parties were counting on the same contract. So in *Carroll* v. *Peake* (1828), 1 Pet. *18, 7 L. Ed. 34, it was held on the' facts that an opponent's copy of an agreement of lease was an original.

> Where duplicates are produced by mechanical means, all are duplicate originals, and any of them may be introduced in evidence without accounting for the nonproduction of the other. *Federal Union Surety Co.* v. *In-*

*diana, etc., Mfg. Co.* (1911), 176 Ind. 328, 95 N. E. 1104;
*International Harvester Co.* v. *Elfstrom* (1907), 101 Minn.
263, 112 N. W. 252, 118 Am. St. 626, 11 Ann. Cas. 107, 12
L. R. A. (N. S.) 343 and cases cited and note.

If the duplicates are originals, it is a necessary corollary
upon proper proof of destruction or loss of an original, which
is primary evidence, that the groundwork is laid for intro-
ducing a copy. The rule would, of course, be otherwise if it
took different parts to constitute the whole, as in an inden-
ture at common law. Other questions presented are fully
covered in the original opinion.

The court was not in error in its holding with respect to
the contract, and the petition for a rehearing is denied.

NOTE.—Reported in 97 N. E. 145 and 98 N. E. 625. See, also,
under (1) 6 Cyc. 513; (2) 1913 Cyc. Ann. 404; (3) 31 Cyc. 648; (4)
6 Cyc. 438; 61 Am. St. 89; (5) 6 Cyc. 626; (6) 6 Cyc. 579, 580; (7,
8) 13 Cyc. 343; 17 L. R. A. 71; (9) 2 Cyc. 1014; (10) 2 Cyc.
1013; (11) 6 Cyc. 505; (12) 31 Cyc. 207; (13) 13 Cyc. 375; (14)
17 Cyc. 471; (15) 17 Cyc. 469; (16) 17 Cyc. 564; 12 L. R. A. (N. S.)
343; (17) 17 Cyc. 557; (18) 3 Cyc. 245; (19) 38 Cyc. 1578; (20) 38
Cyc. 1632; 6 Ann. Cas. 799; (21) 13 Cyc. 385; 32 L. R. A. (N. S.)
867; (22) 13 Cyc. 353; (23) 13 Cyc. 385; (24) 38 Cyc. 1711; (25) 6
Cyc. 653; (26) 9 Cyc. 567; (27) 17 Cyc. 517; 12 L. R. A. (N. S.)
343. For notice of loss or injury to goods, required by carrier's
contract as a condition precedent, see 17 L. R. A. (N. S.) 642; as
to validity of stipulation in carrier's contract requiring notice of
loss within a specified time, as applied to loss due to carrier's negli-
gence, see 17 L. R. A. (N. S.) 628.